No. 20,143.

W. F. McCULLOUGH, doing business as The McCullough Grain Company, *Appellee,* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. COMMON CARRIER—*Misrouting Interstate Shipment—Privilege of Milling in Transit Lost—Jurisdiction of State Courts.* The state courts have jurisdiction of an action against a carrier for damages occasioned by the misrouting of an interstate shipment, by which a privilege of milling in transit was lost, which would have been available if the shipping directions had been followed.

2. SAME — *Misrouting of Shipment Admitted by Carrier — No Proof Thereof Required.* In an action against an initial carrier for misrouting, a statement made at the trial by the defendant's attorney that it admitted that it did misroute the goods, but denied the loss claimed by the plaintiff, dispenses with the necessity of proof that the defendant was in fault, even if the situation is such that it was not liable for the misconduct of a connecting carrier.

3. SAME—*Milling in Transit Lost—Right of Recovery.* Where a shipper of grain is required to submit to a reduction in the selling price because a milling in transit privilege was lost through misrouting, he is entitled to recover the amount of his loss from the carrier in fault.

4. SAME—*Evidence.* The evidence held sufficient to support a finding that a privilege of milling in transit would have been exercised if it had been available.

5. SAME—*Milling in Transit—Contract Construed.* Language of a carrier's tariff giving a privilege of milling in transit "subject to the conditions herein named" held to refer to conditions on which like privileges had been granted in preceding portions of the tariff, as well as to those stated in the same paragraph.

6. SAME—*Privilege of Milling in Transit Lost—No Damages Recoverable under Contract.* Damages for the loss of the privilege of milling in transit through misrouting can not be recovered where the privilege was available only where a reference to it was noted on the shipping order and bill of lading, and no such notation was made.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed October 7, 1916. Reversed.

*W. P. Waggener*, and *J. M. Challiss*, both of Atchison, for the appellant.

*Earl Blake, W. A. Ayres*, and *C. A. McCorkle*, all of Wichita, for the appellee; *A. E. Helm*, of Wichita, of counsel.

The opinion of the court was delivered by

MASON, J.: W. P. McCullough sued the Missouri Pacific Railway Company for damages resulting from the misrouting of wheat shipped by him from points in Kansas to Monticello, Ind. He recovered a judgment for $652.86, and the defendant appeals. He had directed the grain to be sent by way of Chicago, and from there to its destination by the Panhandle route, but it was not moved through Chicago, and was delivered to the Panhandle company at Logansport, Ind. The tariff of the Panhandle route gave a privilege of milling in transit with respect to all grain destined to milling stations such as Monticello, which originated west of Chicago and was there delivered to that company. This privilege, if the shipping directions had been followed, would have inured to the benefit of the buyer at Monticello, by virtue of his contract with the shipper, and would have been worth to him five and a half cents to the hundred pounds. In settling with the plaintiff, the buyer made a deduction at that rate from what he would have been required to pay if the wheat had been routed as agreed upon, so that he could have had the benefit of the privilege referred to. The plaintiff submitted to the deduction and his action against the defendant is to recover on account of the loss he thereby suffered.

1. The defendant maintains that the state courts have no jurisdiction of the subject matter—that the plaintiff can obtain relief for any injury he has suffered only through the interstate commerce commission or the federal courts, because his claim is based upon the interstate commerce act, and upon the provisions of a tariff filed thereunder. No attack however is made by the plaintiff upon the validity of any regulation adopted and no administrative problem is involved.

The jurisdictional question presented is substantially the same as that considered in a recent case (*Elevator Co. v. Railway Co.*, ante, p. 478, 158 Pac. 859), and upon the same reasoning, and upon the authorities there cited, we hold that the action was properly brought.

2. The defendant, which was the initial carrier, contends that the misrouting was the act of a connecting road to which it had properly made delivery; that by the terms of the bill of lading it was exempted from liability for the fault of a subsequent carrier; and that this provision was valid because the prohibition of the Carmack amendment against contracts of that character relates only to claims for physical loss and damage to the property shipped. The record shows that in response to a question by the trial judge as to the issues involved, a stipulation having been entered into as to a part of the facts, the attorney for the defendant said: "Our position is that we did misroute this stuff; that is agreed. But the amount of damage which the plaintiff suffered is not the amount of the milling in transit privilege, but anything else that he can prove, for the reason that the milling in transit privilege does not apply to plaintiff, and these shipments are not covered by it." This statement relieved the plaintiff of the necessity of proving the defendant's responsibility for the misrouting.

3. The defendant also maintains that whatever injury resulted from the loss of the milling in transit privilege fell upon the consignee, and created no cause of action in behalf of the shipper. The plaintiff was entitled to receive the agreed purchase price upon the delivery of the wheat in such manner as to give the purchaser the advantage of that privilege. Not having made delivery in this manner, he was compelled to submit to a corresponding reduction—he suffered a loss of the amount involved, through the failure of the defendant to perform its duty, and therefore had a right to look to it for compensation. The carrier's mistake reduced the selling value of the property shipped. The case is not analogous to one (for instance) where a demand for increased damages for the loss of goods is based upon a contract for their sale at a price above the market. In that situation the carrier's liability could not be affected by a special contract of which it had no notice.

McCullough v. Railway Co.

(6 Cyc. 450, 529.) Here the loss of an advantage that would have accrued under the published tariff if the grain had been routed as directed was one reasonably to have been anticipated from a misrouting—it followed as naturally as damage results from sending goods by a route involving unnecessarily high charges for carriage. The amount of the damage claimed was not fixed by the contract of the shipper and consignee, but by the Panhandle route tariff.

4. The milling in transit privilege is exercised in this manner: Upon the delivery of the grain at the mill the full rate to that point is paid; if the product is shipped in a specified time, a stated portion of this payment is credited upon the charges for such further shipment. The defendant asserts that here it was shown that the purchaser of the wheat from the plaintiff had a greater amount of credits of this character than he had opportunity to use within the time limited, and therefore would have derived no advantage from the privilege if it had been preserved. This was a question of fact. A part of the evidence tended to show that the privilege would have been used if it had been available, and the decision of the trial court on the point is therefore final.

5. A more serious objection to the judgment is raised by the contention that by the terms of the tariff the milling in transit privilege is only available where a reference thereto is noted on the shipping orders and bill of lading, and where shipment is made to a mill, and that here no such notation was made, and the wheat was consigned to the shipper's order. The shipment may perhaps, in view of all the circumstances, be regarded as having been made to the mill within the meaning of the requirement in that regard. The question whether the absence of the notation was fatal to the privilege depends upon the construction of the language of the tariff. Four of its paragraphs, numbered as indicated, read thus:

"(1) Grain to be milled or malted, may be shipped from a station on the P. C. C. & St. L. Ry., or the C. & M. V. R. R., or from stations on a direct connection of the P. C. C. & St. L. Ry. or the C. & M. V. R. R., as specified herein, to another station on the P. C. C. & St. L. Ry. or the C. & M. V. R. R. and eastward thereof, taking the same or less rate basis to eastern cities on the following conditions:

"(2) Shippers must note on their shipping orders 'For Milling or Malting Purposes' and the billing agent must make a like notation on his way bills and bills of lading.

"(3) The Grain must be shipped in carloads, to a mill doing business at a station on the P. C. C. & St. L. Ry. or the C. & M. V. R. R. and must be way billed at tariff rate to milling station, and the tariff rate must also be shown on the bill of lading issued for the grain.

"(4) The agent at milling station must take up the bill of lading on delivery of the grain, and on receiving from the mill within six months after the delivery of the grain thereto, car load shipments of the products of such grain, limited to:" [An enumeration of various products of grain is given, followed by directions as to manner of settlement.]

The paragraph numbered (12) reads as follows, the clause the effect of which is in dispute being italicized:

"(12) Grain in carloads, originating at points beyond Chicago, Ill., and delivered to this Company at Chicago or Chicago Junctions, named above, when destined to milling stations on the P. C. C. & St. L. Ry. or C. & M. V. R. R., to be milled or malted, *will be subject to the conditions herein named;* and the net rate will be the joint through rate on Grain Products from point of shipment on rate basing point to destination, plus one-half cent per 100 pounds (minimum charge $3.00 per car), provided the milled product is forwarded via the P. C. C. & St. L. Ry., or the C. & M. V. R. R., to Western Termini points located on the P. C. C. & St. L. Ry., Pennsylvania Company or Pennsylvania Railroad, or to points taking same rates (see list of points below), or to points east of Western Termini via Union Line, as shown in Union Line Bases for Freight Rates, I. C. C. 11, supplements thereto and reissues thereof, and in the absence of joint through rates the net rate will be published re-shipping rate on Grain Products from Chicago or Chicago Junctions, plus one-half cent per 100 pounds (minimum charge $3.00 per car). The Western Termini referred to above are: Allegheny, Pa.; Bellaire, Ohio; Buffalo, N. Y.; Erie, Oil City, Pittsburg, Titusville, Pa., and Wheeling, W. Va."

The plaintiff contends that the twelfth paragraph is complete in itself; that the requirement concerning the notation on the shipping directions and bill of lading applies only to shipments originating on the Panhandle Route, or at stations on a direct connection therewith. This interpretation involves regarding the words "subject to the conditions herein named" in the italicized clause as relating to the conditions named in that particular paragraph. We feel constrained to hold that the expression quoted refers to the conditions named in the entire tariff of which this paragraph is a part. The punctuation and the connective "and" seem to suggest additional conditions rather than an enumeration of those referred to in the preceding clause. The requirements set out in the earlier paragraphs, especially those concerning the notation, and the char-

acter of products to which the privilege applies, are as well
adapted to shipments originating on one side of Chicago as on
the other, and without them the provisions of paragraph twelve
appear rather incomplete.

6. If (as we have concluded) the privilege of milling in
transit was available only where the words "For Milling or
Malting Purposes" had been noted upon the shipping orders
and bills of lading, the absence of such notation was of course
destructive of the right in the present case, for the carrier
could allow no advantage to the shipper except in accordance
with the published tariff, and the plaintiff therefore suffered no
injury from the misrouting of his shipments.

It results that a reversal must be ordered, and the cause re-
manded with direction to render judgment for the defendant.