Bennett v. Railway Co.

No. 20,849.

A. S. BENNETT, *Appellee,* v. THE MISSOURI PACIFIC RAILWAY
COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMMON CARRIER — *Connecting Carrier* — *Deviation from Contract
Route—Liability for Damages.* A railroad company undertook by a
stipulation in a bill of lading to carry grain to a certain point and
there deliver it to another carrier, by which it was to be transported
to destination; but the company failed to transport and deliver the
grain to the connecting carrier, as it had agreed to do. It forwarded
the grain in another way, which occasioned loss to the shipper. *Held,*
in an action brought by the shipper against the railroad company for
breach of contract, that the company is liable for the loss resulting
from its failure to comply with the agreement stipulated in the bill of
lading.

2. SAME—*Evidence—Findings.* The evidence is held to be sufficient to
sustain the findings and judgment of the trial court.

Appeal from Shawnee district court, division No. 1; ALSTON
W. DANA, judge. Opinion filed May 12, 1917. Affirmed.

*W. P. Waggener, J. M. Challis,* both of Atchison, and *W. A.
S. Bird,* of Topeka, for the appellant.

*Eugene S. Quinton,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by A. S. Bennett
against the Missouri Pacific Railway Company to recover dam-
ages arising from the breach of a contract for the shipment of
grain. From the judgment in plaintiff's favor the defendant
appeals.

It appears that plaintiff contracted to sell nineteen cars of
grain to the Loughry Brothers Milling and Grain Company, to
be shipped from various points in Kansas and delivered at
Chicago, Ill., to the Panhandle Railway Company, to be car-
ried by that company to Monticello, Ind. Upon delivery at
Chicago plaintiff was to recover 82½ cents a bushel for the
wheat, less the freight from the point of shipment to Chicago.
Instructions were given to the defendant to ship by way of
Chicago and there to deliver the shipment to the Panhandle

railroad, a notation to that effect appearing on the bills of lading. The shipment was not routed according to direction and contract, and it was never delivered to the Panhandle railroad at Chicago. Before Loughry Brothers could obtain possession of the grain they were required to pay a higher charge than they would have had to pay under the routing contracted, and Loughry Brothers, in making their remittance to plaintiff, retained therefrom the amount of the extra charges they had paid. Plaintiff brought this action to recover the amount lost by reason of the extra charge, on the ground that the defendant had converted the shipment by not delivering it according to instructions. The defendant admitted an indebtedness in the sum of $238.70 on account of certain overcharges, and tender of that amount was made. Further answering, it was alleged that the overcharges giving rise to the action were based upon certain milling-in-transit privileges provided by the Panhandle railroad; that the plaintiff was not entitled to the benefits of such privileges and was in no way injured by the loss of such privileges; that the Loughry Brothers Milling Company was not entitled to that privilege, as the conditions and regulations permitting its exercise had not been complied with, and that the deductions made by the milling company in their settlement with the plaintiff were unauthorized and illegal. It was further alleged that by virtue of the contract contained in the bill of lading of the defendant the latter was not responsible for the safe carriage or proper routing of the shipment after delivery by it to a connecting carrier. The trial court upheld the contentions of plaintiff and gave judgment against defendant for $1270.60.

It is insisted by defendant that this is a companion of the case of *McCullough v. Railway Co.*, 98 Kan. 710, 160 Pac. 214, and that the rule of that case was not followed by the trial court in this one. The present case was not brought to recover for the loss of the milling-in-transit privilege, nor was that privilege involved in the action brought by the plaintiff. His action was brought to recover damages for the breach of a contract by which the defendant undertook to deliver the wheat to another carrier in Chicago. Plaintiff had contracted with Loughry Brothers Milling and Grain Company that he would cause the wheat to be shipped and delivered to the Pan-

handle railroad at Chicago, and he was to receive from the milling company for the grain 82½ cents a bushel, less the freight from the point of shipment to Chicago, and the wheat was to be forwarded by the company to which it was delivered, from Chicago to Monticello, Ind. The forwarding of the grain from Chicago was not a matter of concern to the plaintiff, as his part in the performance was completed when delivery was made to the connecting carrier in Chicago. The matter of securing a milling-in-transit privilege in the transportation beyond Chicago was no part of his contract with defendant, and the plaintiff testified that he never heard nor knew of any milling-in-transit privilege until after his claim for damages had been presented to the defendant. His action is simply one to recover damages for breach of contract; for the failure of defendant to deliver the wheat to the carrier in Chicago, as it had undertaken to do. The parties having agreed that the wheat was to be carried to Chicago and delivered to another carrier with directions that the latter should forward it to a particular point, the failure of the defendant to comply with the directions and undertaking made it liable for the resulting loss to the plaintiff. The defendant was not justified in shipping it in any other way and delivering it at another place, although the course taken and the delivery made may have seemed to it to have been more practicable than the one stipulated for in the contract of carriage. There was an averment in the answer and statements in the brief indicating that the wheat was delivered to the Wabash Railway Company at St. Louis, Mo., which company did not make a delivery at Chicago, but if this be the fact it would not relieve the defendant of liability for a breach of the stipulation in the bill of lading, even if its own road does not reach Chicago.

In *Goodrich v. Thompson*, 44 N. Y. 324, the carrier undertook to transport goods by a particular boat, but instead of doing so, shipped them in another boat, and they were lost. It was decided that "a specific agreement to do an act in a certain manner is not satisfied by an attempt to do it in another and a failure to accomplish the object." (p. 334.) It was further said in that case that "the forwarding of the goods by another steamer than that agreed upon without the assent of the plaintiffs, or any notice to them of their intention so to forward

them, was clearly not an execution of the agreement the defendants entered into, and they were chargeable with the consequences of the unauthorized act." (p. 334.)

In *Kemendo v. Fruit Dispatch Co.*, 61 Tex. Civ. App. 631, the initial carrier delivered a shipment to another carrier than the one stipulated in the bill of lading which it had issued, and it was held that the wrongful act made the initial carrier liable as though for a conversion of the goods when not delivered or when delivered in a damaged condition.

A case quite closely in point with this one is *Brown & Haywood Co. v. Pennsylvania Co.*, 63 Minn. 546. A carload of glass was delivered to the defendant company, and it issued a bill of lading under which the glass was to be shipped to Snohomish, in the state of Washington, by way of the Chicago, St. Paul & Kansas City railroad and the Northern Pacific railroad. Instead of delivering the glass as contracted, the defendant delivered it to the Union Pacific railroad. The shipper had arranged with the Northern Pacific railroad to stop the car at two points on the route where parts of the shipment were to be unloaded and delivered. As the glass had been shipped over the Union Pacific railroad this could not be done, and considerable loss resulted from the failure to follow the directions in making the delivery to a connecting carrier. It was held, and in fact conceded, that the act of the defendant in delivering the goods to a carrier other than the one agreed upon made itself liable as for a conversion. There was a contention that as the defendant had no knowledge of the contract with the Northern Pacific railroad as to the distribution of the glass at different points on the way, the defendant was released from liability; that it was enough if the goods were delivered at Snohomish, the final destination in the shipment. In response to these claims the court said:

"The fallacy of counsel's position consists in assuming that there was, in fact, any contract between the plaintiff and defendant to carry the goods to Snohomish. Defendant made no such contract. It merely agreed to carry the goods over its own line, and deliver them to the next designated carrier, with proper directions for their future carriage. There its contract and its duties ended. But this contract, made with defendant, was not the whole of plaintiff's contract. It had made another contract with the Northern Pacific Railroad Company to distribute the goods at the three points aforesaid. It is true that defend-

ant had no knowledge of the latter contract, but the latter contract did not concern defendant, or in any manner increase its liability, if it had rightfully performed its own contract; and we can not see that plaintiff was under any obligation to inform defendant of a matter which did not concern it."    (p. 550.)

(See, also, *The Georgia Railroad Company v. Cole & Co.*, 68 Ga. 623; *Johnson v. N. Y. Central R. R. Co.*, 33 N. Y. 610; *Hand v. Baynes*, 4 Wharton [Pa.], 203; *Phila. Etc. R. Co. v. Beck*, 125 Pa. St. 620.)

So here, the defendant undertook to transport the goods to Chicago and deliver them to the Panhandle railroad. There its contract with the plaintiff ended. If it had observed the obligation of its agreement no liability to plaintiff would have been incurred. It is immaterial what arrangement the purchaser of the wheat had with the Panhandle Railroad Company. Whatever it may have been, it constituted no part of the contract between plaintiff and defendant. When it failed to carry out the contract, and when it delivered the grain at a place other than that agreed upon, it became liable as for conversion, and is responsible for the loss occasioned to plaintiff by the violation of the contract.

There is a challenge of the sufficiency of the proof of loss. Plaintiff offered testimony enough, at least, to make a *prima facie* case, of the added charges that had to be paid in order to obtain possession of the wheat, and of the loss occasioned by the breach of the contract. The defendant did not refute this evidence, but appeared to devote most of its attention to the loss of the milling-in-transit privilege and in showing that the plaintiff was not entitled to this privilege; but that privilege, as we have seen, is not involved in this action.

We find no error in the rulings of the trial court, and its judgment is therefore affirmed.

MASON, PORTER, and MARSHALL, JJ., dissent.