# MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY v. THE REEVES COAL COMPANY.[1]

## February 4, 1921.

## No. 22,062.

**Liability under railway tariff cannot be changed by shipper or carrier.**

1. The provisions of a railway tariff established under the interstate commerce law must be complied with until changed or abrogated in the manner provided by that law, and no act of either shipper or carrier will release the other from a liability imposed by such tariff.

**Demurrage charge — deviation of route no excuse.**

2. The fact that the carrier deviated from the route designated in the bill of lading, did not relieve the shipper from demurrage charges imposed by the tariff for failure to unload within the prescribed time after arrival at destination.

**Carrier not liable for special losses of shipper.**

3. Although the carrier becomes an insurer of safe delivery if he de-viates from the designated route without the consent of the shipper, he does not become liable for losses resulting from the inability of the shipper to accomplish some special purpose of which he had no knowl-edge.

**Carrier not liable for loss of more favorable market.**

4. Where the deviation from the designated route prevented the ship-per from diverting the shipment to a more favorable market as he had intended to do, but the carrier had no knowledge of such intention, the loss of the more favorable market cannot be deemed to have been with-in the contemplation of the parties, as a consequence which might re-sult from misrouting, and the carrier is not liable therefor.

[1] Reported in 181 N. W. 335.

Action in the district court for Hennepin county to recover $1,628 demurrage charges on certain cars loaded with coal. Defendant interposed a counterclaim for $4,523.47. The facts are stated in the opinion. The case was tried before Leary, J., who made findings and ordered judgment in favor of plaintiff for $1,378 and interest. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Stanley B. Houck,* for appellant.

*Alfred H. Bright,* for respondent.

TAYLOR, C.

In the years 1912 and 1913 defendant purchased a large quantity of coal at the mines in Tennessee which it shipped in carload lots over the Louisville & Nashville railway and connecting lines to itself at Minneapolis, Minnesota. Plaintiff, known as the Soo, received these shipments from connecting lines, transported them to Minneapolis and there delivered them to defendant. Many of the cars were not unloaded within the time allowed therefor by the published tariff filed with the Interstate Commerce Commission, and plaintiff brought this suit to recover the demurrage, which, under the provisions of the tariff, accrued to it on account of such delays.

The shipments were made under bills of lading which routed them over the Louisville & Nashville, the Big Four, the Ann Arbor and the Soo railways. The shipments which were carried over the route designated in the bills of lading were delivered by the Big Four to the Ann Arbor road, were transported by the Ann Arbor road to Frankfort on the east shore of Lake Michigan, were ferried across the lake by the Ann Arbor road, and were delivered to plaintiff at Manitowoc, Wisconsin, or Manistique, Michigan.

Plaintiff's claim for demurrage on the cars which followed this route was conceded by defendant at the trial and is no longer in controversy. The shipments still in controversy were not delivered to the Ann Arbor road at all, but were delivered by the Big Four directly to plaintiff at Kolze, Illinois, from which point they were transported by plaintiff to Minneapolis.

All the bills of lading named defendant as consignee and Minneapolis

as the point of destination, but defendant did not intend to have the coal brought to Minneapolis, for the reason that Minneapolis received its coal by way of the Great Lakes and Duluth, and the expense of all rail shipments, such as these, was so great that coal so shipped could not be sold in the Minneapolis market except at a loss. By diverting these shipments at Manitowoc, defendant could reach a considerable territory in which it could compete with shipments made by the lakes. It had an arrangement with the Ann Arbor road, provided for in the published tariff of that road, by which cars arriving at Frankfort were held for reconsignment orders. Defendant had salesmen soliciting orders for coal, and, as these orders were received, filled them by directing the Ann Arbor road to reconsign the cars held at Frankfort to the points at which the coal had been sold. The bills of lading, however, contained nothing to show that the cars were to be held or reconsigned, and plaintiff had no knowledge of the arrangement between defendant and the Ann Arbor road. It was stipulated that the shipments now in controversy were delivered to plaintiff by the Big Four at Kolze, Illinois, consigned to defendant at Minneapolis, without any routing instructions or anything on the transfer slips to indicate that they should have been delivered to the Ann Arbor road, and that plaintiff promptly and safely transported them to Minneapolis and duly tendered them to defendant. It was also stipulated that, if plaintiff was entitled to recover demurrage, the amount claimed was the correct amount.

Defendant's answer put in issue the claim for demurrage and set forth a counterclaim for the damages alleged to have resulted from the misrouting. The trial court disallowed the counterclaim and rendered judgment for plaintiff for the amount of the demurrage. Defendant appealed.

It is conceded that plaintiff had no actual knowledge of the contents of the bills of lading, that it received the shipments in controversy from the Big Four at Kolze, Illinois, without any knowledge of the misrouting, and that, acting in entire good faith, it transported them promptly and safely from that point to the point of destination and tendered them to defendant, who was both shipper and consignee. But defendant insists that a through bill of lading is binding, not only on the initial carrier who issued it, but on all connecting carriers who handle the ship-

ment, whether they have actual knowledge of its terms or not, and that plaintiff was bound to know the provisions of the bills of lading, and is not entitled to demurrage, for the reason that the shipments were not transported over the route designated therein. It is probably true that, by virtue of the Federal statutes, the rights and obligations of the shipper and of the several carriers under a through bill of lading are to be measured and determined by the provisions of the bill of lading insofar as they are consistent with such statutes and with the established tariff regulations. Missouri, K. & T. Ry. Co. of Texas v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. ed. 1213; Georgia F. & A. Ry. Co. v. Blish Milling Co. 241 U. S. 190, 36 Sup. Ct. 541, 60 L. ed. 948; Berwind-White Coal Mining Co. v. Metropolitan S. S. Co. 183 Fed. 257; McGinn v. Oregon-Washington R. & Nav. Co. 265 Fed. 81.

But interstate tariffs and tariff regulations once established, cannot be deviated from until changed in the manner provided by law, and all charges provided for therein must be exacted. To shut out opportunity for discrimination and favoritism, neither shipper nor carrier is permitted, by any act of his, to release the other from any liability imposed by such tariffs, and any contract between them, by bill of lading or otherwise, in contravention of such tariffs, is void. By force of the statute, the provisions of the established tariff become unalterable terms of the contract, and the burdens imposed thereby cannot be avoided on the ground of mistake or misconduct on the part of either or both of the parties. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075; Boston & M. R. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. ed. 868, L.R.A. 1915B, 450, Ann. Cas. 1915D, 593; Louisville & N. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. ed. 853, L.R.A. 1915E, 665; Loomis v. Lehigh Valley R. Co. 240 U. S. 43, 36 Sup. Ct. 228, 60 L. ed. 517; Reliance Elevator Co. v. Chicago, M. & St. P. Ry. Co. 139 Minn. 69, 165 N. W. 867; Chicago, M. & St. P. Ry. Co. v. Greenberg, 139 Minn. 428, 166 N. W. 1073, L.R.A. 1918D, 158, Ann. Cas. 1918E, 156.

The tariff, under which these shipments were made, required the payment of demurrage on all cars not unloaded and released within a specified time after notice of arrival at destination, and we are clearly of opinion that the deviation from the route designated in the bills of lad-

ing did not relieve defendant from liability for such demurrage.

In support of its counterclaim, defendant presented proof that under its arrangement with the Ann Arbor road it could have diverted the shipments, when they arrived at Frankfort, to points where the coal could have been disposed of without loss; that the misrouting prevented it from doing so; and that it unavoidably sustained a substantial loss in disposing of the coal at Minneapolis and points supplied from Minneapolis. But none of the carriers, other than the Ann Arbor road, had any notice or knowledge of the arrangement with that road or of defendant's intention to change the place of delivery while the shipments were in transit. This is conceded.

Defendant contends that it had the right to treat the deviation as a conversion of the property. It is well settled that a deviation from the designated route, without the consent of the shipper, makes the carrier an insurer of safe delivery. 4 R. C. L. 815. Whether defendant could refuse to receive the coal after it had been carried to its destination and had been tendered for delivery is doubtful. Lee Line Steamers v. Tucker, 112 Ark. 301, 165 S. W. 961; Saxon Mills v. New York, N. H. & H. R. Co. 214 Mass. 383, 101 N. E. 1075; J. L. Owens Co. v. Chicago, R. I. & P. Ry. Co. 142 Minn. 487, 171 N. W. 768; 4 R. C. L. 817, 831. But that question is not involved here for defendant in fact accepted the coal and never intended to abandon it to the carriers.

While a deviation from the designated route makes the carrier liable as an insurer for all damage to the property and for losses resulting from delay, if of a nature which ought to have been anticipated as likely to result therefrom, it does not make him liable for losses resulting from the inability of the shipper to accomplish some special purpose of which the carrier had no knowledge. Such losses cannot reasonably be deemed to have been within the contemplation of the parties as a consequence which might result from misrouting the shipment, unless the carrier had notice of the special purpose of the shipper. St. Louis S. W. R. Co. of Texas v. Louisiana & Texas Lumber Co. 50 Tex. Civ. App. 179, 109 S. W. 1143; Pond-Decker Lumber Co. v. Spencer, 30 C. C. A. 430, 86 Fed. 846; Simons-Mayrant Co. v. Atlantic Coast Line Ry. Co. (D. C.) 207 Fed. 387; Franklin v. Louisville & N. R. Co. (Ky.) 116 S. W. 765; American Express Co. v. Jennings, 86 Miss. 329, 38 South. 374, 109

Am. St. 708; Lewark v. Norfolk & S. Ry. Co. 137 N. C. 383, 49 S. E. 882; Williams v. Atlantic Coast Line Ry. Co. 56 Fla. 735, 48 South. 209, 24 L.R.A.(N.S.) 134, 131 Am. St. 169; Southern Ry. Co. v. Langley, 184 Ala. 524, 63 South. 545.

That such losses are not recoverable in case of an ordinary contract has long been recognized by this court, see Sargent v. Mason, 101 Minn. 319, 112 N. W. 255; City of East Grand Forks v. Steele, 121 Minn. 296, 141 N. W. 181, 45 L.R.A.(N.S.) 205, Ann. Cas. 1914C, 720, and cases there cited, and under the authorities the same rule applies in case of a contract of carriage.

Plaintiff having had no notice or knowledge of defendant's intention to divert the shipments from the destination named in the bills of lading, cannot be held liable in damages for the additional price which might have been obtained if they had been diverted to a more favorable market.

Judgment affirmed.