# Davis, Appellant, *v.* Kehota Mining Company.

*Shipping receipt—Route—Terminal delivery—Line haul.*

Under the provisions of the Act of Congress of August 21, 1919, (U. S. Compiled Statutes, section 8583), a shipper at the time of the delivery of his property to a railroad company has the right to designate in writing by which route the property shall be transported to destination. It thereupon becomes the duty of the initial carrier "to route said property and issue a through bill of lading therefor as so directed, and to transport said property over its own line or lines, and deliver the same to a connecting line or lines according to such through route, and it shall be the duty of each of said connecting carriers to receive said property and transport it over the said line or lines and deliver the same to the next succeeding carrier or consignee according to the routing instructions in said bill of lading." In the absence of specific instructions to that effect, a route named in a shipping receipt or bill of lading does not refer solely to a terminal delivery, but is intended to include a line haul.

*Practice C. P.—Affidavit of defense—Insufficient averment.*

An averment in an affidavit of defense, after stating that the word "Erie," in connection with the routing instructions on the shipping receipt, only meant the final delivery road, alleged "that plaintiff was so informed and well knew that to be the case when defendant delivered the above shipping receipts to plaintiff at the said shipping point." Such averment does not amount to a specific statement that the defendant's agent at the time of shipping notified plaintiff's agent that in specifying the route via Erie Railroad it was only intended to apply to terminal delivery. The averment should have been stated with such clearness as to leave no doubt of the meaning, rather than use a hazy expression which might easily be understood to apply only to the plaintiff's general knowledge and opinion as to the alleged import of the term. The agents who acted for the plaintiff and defendant respectively in the conversation and the agreement should have been definitely named or the failure to do so satisfactorily explained.

Argued April 30, 1925. Appeal No. 126 April T., 1925, by plaintiff from order of C. P. Allegheny County, January T., 1923, No. 3017, in the case of James C. Davis, Director General of Railroads, *v.* Kehota Mining Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

444      DAVIS, Appel., *v.* KEHOTA CO.

Assumpsit to recover freight undercharges. Before
ROWAND, J.

Rule for judgment for want of a sufficient affidavit
of defense.

The facts are stated in the opinion of the Superior
Court.

The court discharged the rule. Plaintiff appealed.

*Error assigned* was the decree of the court.

*James M. Graham,* and with him *Patterson, Craw-
ford, Miller and Arensberg,* for appellant.—The ship-
ping directions given precluded movement over any
route other than the Erie: Homer Lumber Company
v. Southern Railway Company, 39 I. C. C. 760;
Bruner Co. v. Southern Railway Company, 40 I.
C. C. 549; United Paperboard Company v. Norris-
town and Erie Railroad Company, 61 I. C. C. 483;
Baker-Wakefield Cyprus Co. v. T. & P. Ry., 37 I. C.
C. 546. The averment that the plaintiff knew that the
words "Route Erie" meant that the Erie was the de-
livering carrier was insufficient: 10 Corpus Juris 191.

*Harry S. Dunmire,* and with him *Horace F. Baker,*
for appellee, cited: Gross v. Director General, as
Agent, Erie Railroad Co. et. al., 53 I. C. C. 429; Stock
& Sons v. L. S. & M. S. Ry. Co., 31 I. C. C. 150, 153;
Lake Charles Rice Milling Co. v. L. W. R. R. Co., 69
I. C. C. 508, 513; Midland Linseed Products Company
v. Director General, as Agent, Erie Railroad Co. et.
al., 77 I. C. C. 242.

OPINION BY KELLER, J., October 6, 1925:

This is an action of assumpsit brought by the Direc-
tor General of Railroads against Kehota Mining Com-
pany to recover the unpaid freight charges on six
carloads of coal shipped from Baird's Mine, New
Straitsville, Ohio, over the Hocking Valley Railroad,

consigned to the City of Cleveland, Division Street Pumping Station, Cleveland, Ohio. The plaintiff's statement avers—and it is not denied in the affidavit of defense,—that defendant, as consignor, gave plaintiff written shipping receipts for the aforesaid cars of coal containing shipping instructions to route the cars via Erie Railroad; and the shipping receipts attached to the plaintiff's statement contain the following:

| CONSIGNEE | DESTINATION | ROUTE | RATE |
|---|---|---|---|
| *City of Cleveland, Div. St. Pump Sta.* | *Cleveland, Ohio* | *Erie* | |

Plaintiff averred that pursuant to said instructions said cars had been shipped over the Hocking Valley Railroad to Marion, Ohio, the junction point with the Erie Railroad, and thence over the Erie Railroad to destination. It is not disputed that the rate charged by plaintiff was the legal and proper freight charge for the shipments over the route adopted, as per tariffs on file with the Interstate Commerce Commission.

Defendant, in its affidavit of defense, contended that plaintiff should have shipped the cars over a shorter route, to wit: Hocking Valley Railroad to Columbus, Ohio; thence over C. C. C. & St. L. Railroad (Big Four) to Cleveland; thence by Erie Railroad to the Division Street Pumping Station; averring that "the word 'Erie' [on said shipping receipts] does not mean intermediate routing, but only means, and at the times of the said shipment meant, the final delivering road, and that plaintiff was so informed and well knew that to be the case when defendant delivered the above shipping receipts to plaintiff at the said shipping point." On the strength of this averment the court below refused judgment for want of a sufficient affidavit of defense.

The Act of Congress regulating interstate commerce, in force at the time of shipment, August 21-27, 1919, (Act of February 4, 1887, as amended by Acts of June

29, 1906, June 18, 1910, and August 9, 1917) provides
in section 15 (Barnes Federal Code, section 7904; U. S.
Comp. Stat., section 8583), that the shipper at the time
of delivery of the property to the railroad shall have
the right to designate in writing by which route the
property shall be transported to destination, and it
shall thereupon be the duty of the initial carrier "to
route said property and issue a through bill of lading
therefor as so directed, and to transport said property
over its own line or lines, and deliver the same to a
connecting line or lines according to such through
route, and it shall be the duty of each of said connect-
ing carriers to receive said property and transport it
over the said line or lines and deliver the same to the
next succeeding carrier or consignee according to the
routing instructions in said bill of lading." It is clear
that the act of Congress in providing that the shipper
may designate the route over which the property is
to be transported does not refer to the "final deliver-
ing road," but used the word in its ordinary sense,
"The course or way which is to be traveled" (Web-
ster). It would also seem that the route set up by the
defendant in its affidavit of defense as the one which
should have been adopted by the plaintiff would not
be a routing by the Erie Railroad, but a routing by the
Big Four Railroad to Cleveland, the place of destina-
tion, with a switching operation over the Erie Rail-
road to consignee at point of delivery; for such would
have been the effect if defendant had instructed plain-
tiff to route the cars by the Big Four Railroad. In
Missouri Pac. R. Co. v. Reynolds-Davis Grocery Co.,
(— U. S. —), Adv. Ops. June 15, 1925, P. L. 627, a
carload of sugar shipped from Raceland, La., to Fort
Smith, Ark., was lost while in the possession of the
St. Louis & San Francisco Railroad. The court said
(BRANDEIS, J.): "The joint through rate covered de-
livery at the warehouse of the consignee. The bill of
lading named Morgan's Louisiana & Texas Railroad

and Steamship Co. as the initial carrier and the route
designated therein named the Missouri Pacific as the
last of the connecting carriers.  Its lines enter Fort
Smith but do not extend to the consignee's warehouse.
It employed the St. Louis & San Francisco to perform
the necessary switching service.  And it paid therefor
$6.30, the charge fixed by the tariff on file with the In-
terstate Commerce Commission.  The switching carrier
was not named in the bill of lading and did not receive
any part of the joint through rate.  It was simply the
agent of the Missouri Pacific for the purpose of de-
livery.  The Missouri Pacific was the delivering carrier
and is liable as such."  In Fechheimer Steel & Iron
Co. v. Penna. R. Co., 51 I. C. C. 183, the shipment was
delivered to the Pennsylvania Railroad at Rahway, N.
J., consigned to Lebanon, Pa.  "Route, P. & R.," with
no rate or junction point inserted in the shipping re-
ceipt or bill of lading—just as in this case.  The com-
plainant urged before the Interstate Commerce Com-
mission that the shipment should have been carried by
the Pennsylvania Railroad over its own and subsidiary
line (Cornwall & Lebanon Railroad) to Lebanon, and
there switched over to Philadelphia & Reading Rail-
way for delivery—a shorter and less expensive haul
than that used,—but the commission ruled otherwise,
saying:  "We are of opinion that the notation in the
bill of lading 'P. & R.' indicated clearly that a line haul
over the Reading was desired and this, therefore,
placed the Pennsylvania under the obligation of turn-
ing the shipment over to the Reading at its junction
with that line."  So also, in Prentiss v. Penna. R. Co.,
19 I. C. C. 68, the notation by the consignor on a bill
of lading of the letters "D. L. & W. R. R." in the blank
intended for the naming of the route on a shipment
from Philadelphia to Buffalo, was interpreted by the
Commission to require the defendant to deliver the car
to the Lackawanna Railroad at Manunka Chunk, the
first point of junction, and the instructions were not

satisfied by a mere delivery at Buffalo on the terminal of the latter line. The Commission held that otherwise the note should be "for delivery only," p. 69. In United Paper Board Co. v. N. & E. R. Co., 61 I. C. C. 483, the route specified by the shipper was, Morris & Essex—D., L. & W.—and Central of N. J. The shipper complained to the commission because by the route adopted the haul was longer than if the D., L. & W. had carried the shipment to the place of destination, using the Central Railroad of N. J. only for a switch movement of one and one-half miles to delivery point of consignee. But the commission said: "The shipper's direction in the bills of lading to route the shipments C. R. R. authorized movement over a route which would afford the Central a line haul: Fechheimer Iron & Steel Co. v. P. R. R., 51 I. C. C. 183. The lighterage and switching service of the Central from Hoboken is a terminal service and the shipments were not misrouted," p. 484. For the same reason this plaintiff was justified in construing the direction in the shipping receipt to route the shipments via Erie Railroad as authorizing movement over a route which would afford the Erie a line haul instead of only a switching service of a few miles within the limits of the City of Cleveland. That the ordinary routing as specified in a shipping receipt or bill of lading is different from mere terminal routing or delivery is obvious from Interstate Commerce Commission Conference Ruling No. 321, in force since 1911, which provides, inter alia, "In order to secure desired delivery to industries, plants or warehouses and avoid unnecessary terminal or switching charges, the shipper may direct as to terminal routing or delivery of shipments which are to go beyond the lines of the initial carriers; and his instructions as to such terminal delivery must be observed in routing and billing such shipments." As was pointed out by the commission in Prentiss v. P. R. R., supra, if the defendant desired the shipment to

go by the Erie Railroad for terminal delivery only, instead of for at least a part of the haul, it should have given instructions on the shipping receipt for *terminal* routing and delivery by the Erie. It is only in the absence of specific routing instructions to the contrary that the shipper is entitled to have his shipment moved over the cheapest available route: Midland Linseed Products Co. v. Erie R. Co., 77 I. C. C. 242, 243. If the shipper directs the longer route the railroad is bound to follow directions; and as the owner of the goods shipped has the right of diversion in transit and may direct and receive a delivery at an intermediate point along the designated route, it is necessary for the railroad to follow the routing instructions, even though not the shortest haul, as otherwise the diversion privilege may be seriously interfered with to the shipper's loss and damage: Va. & S. W. R. Co. v. Sutherland, 197 S. W. 863 (Tenn.); Napoli v. Erie R. Co., 165 N. Y. Supp. 206; McCullough v. M. P. Ry., 160 Pac. 214 (Kan.); Minn., St. P. & S. S. M. Ry. Co. v. Reeves Coal Co., 181 N. W. 335 (Minn.), 14 A. L. R. 405. We are, therefore, of opinion that in the absence of specific instructions to that effect, a route named in a shipping receipt or bill of lading does not refer solely to terminal delivery but is intended to include a line haul. In St. Louis & S. F. R. Co. v. Bondies, 166 Pac. 179 (Okla.), the shipment was routed from Durant, Okla., to Alexandria, La., by way of "Rock Island railroad and Rock Island delivery." In Minn., St. P. & S. S. M. Ry. Co. v. Reeves Coal Co., supra, the route named was via L. & N., Big Four, Ann Arbor, and Soo Rys. The shipment was misrouted in being delivered by Big Four directly to the Soo Railway. In Carney v. Director General, 68 I. C. C. 199, the route named was "Erie," which was not the terminal carrier.

Does the averment in the affidavit of defense,—after stating that the word "Erie," in connection with the routing instructions on the shipping receipt, only

meant the final delivery road—"that plaintiff was so informed and well knew that to be the case when defendant delivered the above shipping receipts to plaintiff at said shipping point," amount to a specific statement that the defendant's agent at the time of shipping the six cars in question notified plaintiff's agent in charge of the Hocking Valley Railroad at New Straitsville, that in specifying the route via Erie Railroad it was only intended to apply to terminal delivery of the coal at the City's Division Street Pumping Station? We think not. It does not say so in terms although it would have been a very easy matter to have so expressed it. It seems to us, rather, to be an intentionally vague way of expressing the conclusion above referred to—and found not to be in accord with a correct construction of the act of Congress—that the use of a single railroad in routing instructions was equivalent to directions for a mere terminal routing or delivery and that the plaintiff had knowledge and was aware of such interpretation. If defendant referred to a definite conversation and agreement between its agent and the agent of the plaintiff with respect to the meaning of the words "Route—Erie" it should have been stated in the affidavit of defense with such clearness as to leave no doubt of the meaning, rather than use a hazy expression which may easily be understood as applying only to the plaintiff's general knowledge and information of the alleged import of the term; and if so, the agents who acted for the plaintiff and defendant respectively in this conversation and agreement should have been definitely stated or the failure to do so satisfactorily explained: Miner-Hilliard Milling Co. v. Rosato, 81 Pa. Superior Ct. 94; Folsom Real Estate Co. v. Esmark, 38 Pa. Superior Ct. 580; Heyser Lumber Co. v. Whiting Lumber Co., 62 Pa. Superior Ct. 76.

On full consideration of the case we are of opinion that the affidavit of defense is clearly insufficient and

that the plaintiff was entitled to judgment by reason thereof.

The assignment of error is sustained, the order is reversed and the record is remitted to the court below with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the said court why such judgment should not be so entered.