ILLINOIS CENTRAL RAILROAD COMPANY v. VAN DUSEN-HARRINGTON COMPANY.[1]

March 18, 1927.

Nos. 25,868, 26,269.

**When tariff rates bind both carrier and shipper.**
1. Tariff rates filed and published as required by the interstate commerce act are binding and conclusive on both carrier and shipper until changed in the manner provided in the act.

**Action maintainable to collect undercharges on prepaid shipments.**
2. The delivering carrier may maintain an action to collect undercharges on prepaid shipments.

[1] Reported in 212 N. W. 940, 214 N. W. 278.

**Why supplement to tariff did not establish a rate.**

3. The interstate commerce commission authorized a carrier to issue a supplement to its tariff, on less than the statutory notice, canceling and reissuing a former supplement unchanged except to correct a specified mistake. In the new supplement a rate of 17.5 cents, which should have remained unchanged, appeared as 1 .5 cents, the figure 7 having been dropped out in printing. *Held* that this supplement did not establish the 1.5 cent rate as a lawful rate as it was not authorized by the commission and the statutory notice was not given.

Appeal and Error, 4 C. J. p. 1093 n. 77.
Carriers, 10 C. J. p. 431 n. 8, 9, 18 New; p. 449 n. 66.

Action in the district court for Hennepin county to recover freight charges. There were findings for the plaintiff and defendant appealed from an order, Montgomery, J., denying its motion for a new trial. Affirmed.

*A. C. Remele*, for appellant.

*Briggs, Weyl & Briggs*, for respondent.

TAYLOR, C.

This is an action to recover a balance claimed to be due for transporting 50 carloads of grain from Minneapolis, Minnesota, to Memphis, Tennessee. The shipments were carried from Minneapolis to Chicago, Illinois, by the Chicago, Rock Island & Pacific railway and from Chicago to Memphis by the Chicago & Alton and the Illinois Central railways. They were carried on through bills of lading issued by the Rock Island, the initial carrier, each of which stated that the freight charges to destination had been prepaid. The question in dispute is whether the rate so charged and collected had been established as the lawful rate.

The Rock Island, by its tariff schedules filed with the interstate commerce commission, had established a rate of 15 cents per 100 pounds for the haul from Minneapolis to Chicago. That this rate had been legally established is not questioned. The Chicago & Alton, by supplement No. 13 to its tariff schedules filed with the interstate commerce commission, had established a rate of 17.5 cents per 100 pounds for the haul from Chicago to Memphis. That this rate had been legally established is not questioned. The rate from

Minneapolis to Memphis was the sum of these two rates, or 32.5 cents per 100 pounds. Supplement No. 13 of the Chicago & Alton also fixed a rate from Chicago to Key West, Florida. After that supplement had been filed and published, it was discovered that a mistake had been made in printing the rate to Key West, in that the so-called arbitrary in that rate had been printed in words "twelve and one-half" and in figures "16½" cents per 100 pounds. The Chicago & Alton made an application to the interstate commerce commission for permission to correct the mistake by filing and putting in force, on less than the statutory notice, a supplement containing the correction in place of supplement No. 13. Upon this application, the commission made an order authorizing the Chicago & Alton to file and publish a supplement under a new number canceling supplement No. 13 and reissuing that supplement "without change, except to establish correction of error as set forth in the application," such supplement to be effective on not less than five days' notice, but specifically denying the application "in so far as it asked for further relief." Pursuant to this order the Chicago & Alton prepared supplement No. 15 which was, or at least was intended to be, simply a reissue of supplement No. 13 unchanged except for the correction in the rate to Key West. In printing supplement No. 15, however, the figure 7 in the rate from Chicago to Memphis was dropped out so that, as printed, that rate stood 1 .5 cents per 100 pounds; that is, the figure 1, a blank where the figure 7 had been, the decimal point and the figure 5. As thus printed supplement No. 15 was filed with the interstate commerce commission to be effective five days thereafter. The Rock Island computed the rate from Minneapolis to Memphis for the shipments in controversy by adding to the rate from Minneapolis to Chicago the rate of 1.5 cents per 100 pounds appearing in supplement No. 15 as the rate from Chicago to Memphis, making the through rate 16.5 cents per 100 pounds, and collected that amount. The rate for the through haul as thus computed was 16 cents per 100 pounds less than the legal rate previously established for that haul. The delivering carrier, the Illinois Central, seeks to recover the alleged undercharge of 16 cents per 100 pounds.

Defendant admits that freight charges are ordinarily to be collected by the delivering carrier, but insists that where the initial carrier collects the freight charges in advance and issues through bills of lading stating that the charges have been prepaid, an action to recover the amount of an undercharge must be brought by the initial carrier as that carrier made the contract in which the mistake occurred.

Under the rulings of the interstate commerce commission, it is the duty of the delivering carrier to collect the amount of undercharges, including undercharges on prepaid shipments. Ruling No. 16 of January 6, 1908; ruling No. 156 of April 5, 1909; Western Classification Cases, 25 I. C. C. 475. See also Louisville & Nashville R. Co. v. Sloss-Sheffield S. & I. Co. 269 U. S. 217, 46 Sup. Ct. 73, 70 L. ed. 242, in which it is held that the connecting carriers are jointly and severally liable for an overcharge. Also see Southern Pac. Co. v. Larabee, 89 Kan. 608, 132 Pac. 205. The delivering carrier is jointly interested with the other carriers in the collection of the undercharge, and we think is authorized to sue therefor.

It is thoroughly settled by repeated decisions of the Supreme Court of the United States that where tariff rates have been filed and published as required by the interstate commerce act, they are binding and conclusive upon both carrier and shipper until changed in the manner provided by that act. The lawfully established rate for hauling grain from Chicago to Memphis was 17.5 cents per 100 pounds prior to the filing of supplement No. 15. What, if any, change that supplement made in that rate is the troublesome and doubtful question in this case.

Defendant contends, in substance, that shippers are not required to look beyond the schedule of rates as filed and published to ascertain whether they have been filed and published as required by the statute; and, that as 1.5 cents appeared in supplement No. 15 as the rate, defendant had the right to rely thereon and the carriers are bound thereby, whether that rate was filed and published in conformity with the requirements of the statute or in violation thereof.

Plaintiff does not seriously question that the rate of 1.5 cents,

although plainly a mistake in printing, would be binding and conclusive if legally filed and published, but contends that it never became the lawful rate for the reason that it was not legally filed or published, and that inserting it in supplement No. 15 violated both the statute and the order of the commission.

Subdivision 3 of section 6 of the interstate commerce act provides:

"No change shall be made in the rates, fares, and charges or joint rates, fares, and charges which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the Commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares, or charges will go into effect. * * * Provided, that the Commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified, * * * either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

Supplement No. 15, in so far as it purported to change the rate from Chicago to Memphis, was issued in violation of both the statute and the order of the commission for the notice required by the statute was not given, and the order of the commission expressly prohibited the making of any change except to correct the specified mistake in the rate to Key West. The purpose of the supplement was to correct that mistake and it could not lawfully make any other change in rates.

Our attention has not been called to any case involving the precise question here presented, but the federal Supreme Court has said many times in cases involving rates that a rate lawfully established can be changed only in the manner prescribed by the act. We note a few of the cases and some of the expressions found therein.

In Texas & Pac. Ry. Co. v. Abilene C. Oil Co. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075, the act "made it unlawful to depart from the rates in the established schedules until the same have been changed as authorized by the act." The pur-

pose of the act was to require the establishment of reasonable rates, "which should not be departed from so long as the established schedule remained unaltered in the manner provided by law." The rate "must be treated by the courts as binding upon the shipper, until regularly corrected in the mode provided by the statute."

In Robinson v. B. & O. R. Co. 222 U. S. 506, 32 Sup. Ct. 114, 56 L. ed. 288, the act "declared that the rates named in schedules so established should be conclusively deemed to be the legal rates until changed as provided in the act. * * * Rate established * * * obligatory * * * until changed in the manner provided."

In United States v. Miller, 223 U. S. 599, 32 Sup. Ct. 323, 56 L. ed. 568:

"That the rates so established are obligatory upon carrier and shipper, and must be strictly observed by both until changed in the mode prescribed, are propositions which are not only plainly stated in the act, but settled by repeated decisions of this court. * * * Publication is a step in establishing rates."

This court has taken it for granted that under the federal decisions a rate once established cannot be changed without complying with the conditions prescribed by the statute. M. St. P. & S. S. M. Ry. Co. v. Reeves Coal Co. 148 Minn. 196, 181 N. W. 335, 14 A. L. R. 405, and cases there cited.

In Davis v. Portland Seed Co. 264 U. S. 403, 44 Sup. Ct. 380, 68 L. ed. 722, where a rate had been established for a given haul and thereafter the carrier violated the statute by publishing a lower rate for a longer haul without permission from the commission, the court said it "would be going too far to hold * * * that the unauthorized publication established the lower rate as the maximum permissible charge."

In American S. R. Co. v. D. L. & W. R. Co. (C. C. A.) 207 F. 733, the commission found that certain allowances to shippers authorized by the established tariffs were in substance rebates and unlawful. In its decision the commission said:

"No order will be made at this time, but the Commission will expect the carriers in question at once to conform their tariffs and

practices to the principles here announced. If this is not done, the Commission will take such steps to enforce compliance with its views in this connection * * * as it may deem advisable."

Thereupon the carriers desisted from making such allowances but filed no new tariffs. The court held that the allowances were not rebates but operated only to reduce the rates to that extent, and that the shippers were entitled to recover the allowances for the reason that the order of the commission did not effect a change in the rates and no new or corrected rates had been filed. The court said, "those rates cannot be changed, indirectly or without the formalities and notice expressly enjoined by the provisions of law."

A year or more after the error in supplement No. 15 had been corrected by the issuance of supplement No. 16, the interstate commerce commission made an order at the instance of the carriers which recited that supplement 13 named a rate of 17.5 cents; that supplement 15 erroneously showed that rate as 1.5 cents; that "Supplement 15 canceled the 17.5 rate appearing in Supplement 13 as of January 29, 1921, and on and after that date higher class rates became applicable to the transportation referred to;" and that supplement 16 had restored the 17.5 cent rate, and which order authorized the carriers to adjust charges for shipments "on which the higher class rates were applicable" on the basis of the 17.5 cent rate.

The commission apparently held that supplement No. 15 did not establish the 1.5 cent rate, but did cancel supplement No. 13 and with it the 17.5 cent commodity rate, as that was not reissued, leaving shipments previously covered by that rate subject to the higher class rate.

We concur in the conclusion that supplement No. 15 did not establish 1.5 cents as the lawful rate. Whether the rate of 17.5 cents remained in force, or whether that rate was canceled leaving the shipments subject to the higher class rate, as held by the commission, we need not inquire for in either event the charges are to be adjusted on the basis of that rate.

The trial court made findings in which the facts are set forth in detail, and directed judgment for the amount by which the freight

charges, computed on the basis of the 17.5 cent rate, exceeded the amount paid by defendant. We think the conclusion reached by the learned trial court is correct and its order denying a new trial is affirmed.

On June 10, 1927, the following opinion was filed:

No. 26,269.

PER CURIAM.

This is the second appeal in this action. The first appeal was from an order denying a new trial and the decision thereon was filed March 18, 1927, and appears supra, page 488. After the remittitur to the district court judgment was entered in that court, and this appeal is from the judgment. It is submitted without argument on the former record and briefs, the purpose being to obtain a final judgment in this court. The questions presented were fully considered on the former appeal, and for the reasons there stated the judgment is affirmed.